IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-CV-139-BO-KS

| | | |
|---|---|---|
| K.D., BY AND THROUGH HER PARENTS, DANIEL DAHLMAN AND JULIANNE DAHLMAN,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON MONTESSORI PUBLIC CHARTER SCHOOL,<br><br>Defendant. | ) | ORDER |

This cause comes before the Court on defendant's motion for partial judgment on the pleadings. Plaintiff has responded, defendant has replied, and in this posture the motion is ripe for disposition. For the reasons that follow, defendant's motion for partial judgment on the pleadings is granted.

BACKGROUND

Plaintiff, proceeding by and through her parents, filed this action seeking relief from the final decision of an Administrative Law Judge (ALJ) in underlying proceedings pursuant to the Individuals with Disabilities Education Improvement Act (IDEA), 20 U.S.C. § 1400, *et seq.* and parallel state law. Plaintiff also seeks relief under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and for constitutional violations. Defendant now seeks partial judgment on the pleadings on plaintiff's claims for retaliation under Section 504 of

the Rehabilitation Act and the Americans with Disabilities Act (Count IV), claims under 42 U.S.C. § 1983 (Count V), and claims for violation of the North Carolina Constitution (Count VI).[1]

The Court summarizes the relevant facts below, but otherwise relies on the allegations in the amended complaint. Defendant, WMPCS, is a public charter school in Beaufort County, North Carolina. Plaintiff, K.D., was born in 2012 and is an IDEA-eligible student who lives in Beaufort County with her parents. She has been diagnosed with, among other things, autism spectrum disorder, attention deficit and hyperactivity disorder, anxiety, sensory processing disorder, and pragmatic language impairments. K.D. is entitled to receive special education and related services and attended WMPCS. The facts underlying plaintiff's claims addressed herein occurred during the 2023-2024 school year. During this school year, there were multiple individualized education program (IEP) meetings held regarding K.D., and plaintiff alleges that WMPCS failed to create appropriate IEP goals which would address K.D.'s needs and further failed to provide K.D. with requisite services and supports. K.D.'s parents, Daniel and Julianne Dahlman, had earlier been banned from WMPCS's campus.

On March 29, 2024, K.D. was banned from WMPCS. The ban arose after K.D. had accused a WMPCS staff member of touching her, causing K.D. harm. K.D.'s parents contacted law enforcement once they learned of the touching and WMPCS sought to interview K.D. regarding the incident. K.D.'s parents would not consent to K.D. being interviewed. WMPCS sought to determine if K.D. had made a wrongful allegation against the staff member, which would constitute intolerable behavior under the school's policy. WMPCS scheduled a manifestation determination review and disciplinary proceeding.

[1]Plaintiff's amended complaint references Count V for both her § 1983 claims and her North Carolina Constitution claims. For clarity, the Court refers to the North Carolina Constitution claims as Count VI.

Plaintiff filed a due process petition on March 26, 2024. Despite plaintiff requesting a continuance, WMPCS held the manifestation determination review (MDR) and disciplinary hearing on March 27, 2024. The review team determined that K.D.'s conduct was not a manifestation of her disability and on March 29, 2024, the WMPCS board of trustees determined that K.D. had made a wrongful allegation against a staff member in violation of policy and excluded K.D. from WMPCS, banning her from campus.

WMPCS did not provide any services to K.D. from March 29, 2024, to June 6, 2024. Plaintiff's parents repeatedly requested that WMPCS provide special education services to K.D. during this time-frame, but it refused. A contested case hearing on plaintiff's due process petition was held over a period of fourteen non-consecutive days in September, October, and November 2024 and the ALJ issued a final decision on April 10, 2025. The ALJ determined, among other things, that plaintiff had failed to prove that WMPCS had denied K.D. a free appropriate public education (FAPE) from October 9, 2023, through March 9, 2024, and that she had failed to prove any substantive harm for the denial of a FAPE from March 29, 2024, through the remainder of that school year. *See* [DE 1-3]. Plaintiff sought relief from the ALJ's decision by filing this action on July 9, 2025.

DISCUSSION

A Rule 12(c) motion is considered under the same standard as a Rule 12(b)(6) motion. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011). Thus, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, this standard does not permit a plaintiff to

merely plead the elements of a cause of action alongside legal conclusions; the Court need not accept those as true. *Id.* at 555.

The primary distinction between Rules 12(b)(6) and 12(c) is that Rule 12(c) permits a court to consider a defendant's answer in addition to plaintiff's complaint. However, a defendant may not rely on allegations of fact as provided in the answer if they are contradictory to the facts presented in the complaint. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Judgment on the pleadings should be granted therefore only "where the moving party is clearly entitled to the judgment it seeks as a matter of law." *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008).

The Court considers first plaintiff's retaliation claims under Section 504 of the Rehabilitation Act (Section 504) and the Americans with Disabilities Act (ADA). Both claims proceed under the same standard, *see Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999), and require a plaintiff to ultimately show that she engaged in protected conduct, that she suffered an adverse action, and that a causal connection exists between the protected conduct and the adverse action. *Southard v. Wicomico Cnty. Bd. of Educ.*, 79 F. Supp. 3d 552, 559 (D. Md. 2015).

Plaintiff alleges that she engaged in protected activity by filing a due process petition on March 26, 2024, and that she suffered adverse action when (1) she was excluded from school on March 29, 2024, and (2) when WMPCS failed to provide her with any services from March 29 to June 6, 2024. Plaintiff has failed to plausibly allege a causal connection between her due process petition and the alleged adverse action. Taking plaintiff's allegations as true, the disciplinary process which led to her exclusion from school was underway before she filed her due process

petition. For example, plaintiff alleges that a MDR and disciplinary hearing had been scheduled and that she requested a continuance of the proceeding, which was denied prior to its commencement on March 27.[2] Indeed, plaintiff has alleged that WMPCS had plans to exclude K.D. from school prior to the MDR and disciplinary proceeding. Accordingly, despite the brief temporal proximity between the filing of the due process petition and K.D.'s exclusion, plaintiff's inference of retaliation is not plausible in light of the proceedings which were already underway. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006). The Court further agrees with defendant's argument that the failure to provide K.D. with educational services following her exclusion from school was a consequence of the exclusion, and not a discrete, separate adverse action. Plaintiff's Section 504 and ADA retaliation claim is dismissed.

Plaintiff further alleges that WMPCS deprived her of the most basic education in violation of the Due Process Clause of the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law[.]" U.S. Const. amend. XIV, § 1. "Due process contains both substantive and procedural components. Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014).

In opposition to the Rule 12(c) motion, plaintiff argues that she has plausibly alleged that she had a property interest in being placed at WMPCS and that WMPCS improperly excluded K.D. It is undisputed that North Carolina's children have a property interest in accessing public

---

[2] The Court further agrees with WMPCS's argument that plaintiff's amended complaint fails to include relevant dates, and that this itself would support dismissal. Nonetheless, plaintiff's allegations support that the disciplinary process was underway before plaintiff filed her due process petition.

education. *See* N.C. Gen. Stat. § 115C-1. But "[t]he property interest in education created by the state is participation in the entire process." *Pegram v. Nelson*, 469 F. Supp. 1134, 1139 (M.D.N.C. 1979). "In other words, with respect to public education, citizens possess a property interest not in the particulars of the educational experience, but rather in participation in the educational process as a whole." *O.V. v. Durham Pub. Schs. Bd. of Educ.*, No. 1:17CV691, 2018 WL 2725467, at *27 (M.D.N.C. June 6, 2018) (cleaned up, citation omitted), *report and recommendation adopted,* No. 1:17-CV-691, 2018 WL 3370644 (M.D.N.C. July 10, 2018). Plaintiff has cited no case which would support the conclusion that she had a property interest, not in public education generally, but in public education at WMPCS. Instead, plaintiff relies on her allegations that she was not provided a FAPE and those relating to the setting or adequacy of the educational setting, claims which fall exclusively under the IDEA and do not form the basis of a § 1983 due process claim. *See, e.g., S.F. v. Union Cnty. Bd. of Educ.*, No. 3:23-CV-00139-FDW-DCK, 2024 WL 1316229, at *5 (W.D.N.C. Mar. 27, 2024).

Plaintiff's argument that the IDEA's stay-put provision conferred a property interest in her continued enrollment at WMPCS also fails. "[T]he touchstone of the term 'educational placement [as used in the IDEA] is not the location to which the student is assigned but rather the environment in which educational services are provided." *AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 682 (4th Cir. 2004). And again, insofar as plaintiff relies on the IDEA and WMPCS's alleged failure to provide her with a FAPE, such allegations support claims under the IDEA, not the Fourteenth Amendment.

Plaintiff also brings an equal protection claim in Count V, specifically a "class of one" claim which requires her to allege '"that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Willis v. Town*

*Of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005) (citation omitted). "To state an equal protection violation, plaintiff[] must plausibly allege facts sufficient to identify actual, similarly situated students to [K.D.] who were treated differently." *Vlasaty v. Wake Cnty. Pub. Sch. Sys. Bd. of Educ.*, No. 5:17-CV-578-D, 2018 WL 4515877, at *8 (E.D.N.C. Sept. 20, 2018). Plaintiff has failed to identify actual, similarly situated students, and instead relies on generalized allegations concerning other students with disabilities who were, for example, able to receive educational services during the same period. This is insufficient, even at this early stage of the proceeding.

Finally, the Court considers plaintiff's claims under the North Carolina Constitution. It is well established that a plaintiff may not maintain a claim under the North Carolina Constitution when adequate remedies at state law exist. *Corum v. Univ. of N.C.,* 330 N.C. 761, 781-82 (1992). To plausibly allege a violation of North Carolina's Constitution, the plaintiff must allege (1) the violation of her constitutional rights by a state actor, (2) her claim must be colorable, and (3) she must have no adequate remedy under state law. *Deminski on behalf of C.E.D. v. State Bd. of Educ.*, 377 N.C. 406, 413 (2021). "No adequate state remedy exists when 'state law does not provide for the type of remedy sought by the plaintiff.'" *Id.* (cleaned up, citation omitted). The "term 'adequate' . . . is not used to mean 'potentially successful.'" *Craig ex rel. Craig v. New Hanover Bd. of Educ.*, 185 N.C. App. 651, 656 (2007), *rev'd on other grounds sub nom. Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334 (2009). Rather, it means '"available, existing, applicable remedy.'" *Id.* (citation omitted).

Plaintiff alleges that WMPCS deprived her with the opportunity to receive a sound, basic education in violation of Article I, Section 15 and Article IX, Section 2 of the North Carolina Constitution when it did not provide plaintiff access to educational instruction between her exclusion from WMPCS and June 6, 2024. Plaintiff alleges that the administrative process is both

inadequate and futile because plaintiff lacks an opportunity to challenge the constitutionality of the education WMPCS was required to provide. In her opposition to the instant motion, plaintiff frames her claim as a hostile educational environment claim, citing generally to her amended complaint. Plaintiff argues that, while she could challenge the legitimacy of her exclusion, no state court could redress K.D.'s unique injury of being the victim of a hostile educational environment in which her educators plotted K.D.'s educational failure. K.D. further argues that she has sufficiently alleged that WMPCS was deliberately indifferent to the hostile education environment.

In *Deminski*, North Carolina's Supreme Court held that "the right to a sound basic education rings hollow if the structural right exists but in a setting that is so intimidating and threatening to students that they lack a meaningful opportunity to learn." *Deminski*, 377 N.C. at 414. Courts had found plausible claims under the North Carolina Constitution where a student alleges, for example, sexual harassment and the deprivation of the right to bodily integrity and a school's deliberate indifference to the same. *See Doe 2 v. Nash Cnty. Bd. of Educ.*, No. 5:25-CV-211-BO-KS, 2026 WL 313457, at *3 (E.D.N.C. Feb. 5, 2026).

Here, plaintiff does not allege harassment or deliberate indifference in the same vein as those plaintiffs who have plausibly alleged claims under the North Carolina Constitution for a hostile educational environment. *See K.H. by & through Hartman v. Dixon*, No. 290A24, 2026 WL 2357938, at *7 (N.C. Aug. 14, 2026) ("local school authorities may not be deliberately indifferent to extreme, in-school conduct that deprives a student of the opportunity to access a sound basic education on equal terms."). Rather, plaintiff has alleged the neglect of her education by WMPCS's failure to provide her with the proper educational services and her ultimate exclusion from the school. State law provided plaintiff with an opportunity to remedy these wrongs. *See, e.g.,* N.C. Gen. Stat. §§ 115C-109.6; 150B-43. Plaintiff's North Carolina Constitution claim therefore fails.

## CONCLUSION

In sum, having considered the pleadings and the arguments of the parties, the Court determines that defendant is entitled to judgment on the pleadings in its favor on Counts IV, V, and V (referred to herein as Count VI) of plaintiff's amended complaint. Defendant's motion [DE 34] is GRANTED and these counts are DISMISSED with prejudice.

SO ORDERED, this 15 day of September 2026.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE